UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Stephen Jay Obie,<br><br>                              Plaintiff,<br><br>                    v.<br><br>Commodity Futures Trading Commission,<br><br>                              Defendant. | _____ 23 _____ Civ. _____ 4459 _____<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Jay Obie ("Plaintiff"), through his undersigned counsel, by and for his Complaint against defendant Commodity Futures Trading Commission ("CFTC" or the "Commission"), respectfully alleges as follows:

## INTRODUCTION

1.       The United States is the greatest nation the earth has ever seen, founded on the principles of freedom, liberty, and the rule of law.  This case involves the federal government's illegal prior restraint on two freedoms granted by the Constitution, the freedom of speech and the freedom of religion, in violation of the First Amendment and the Religious Freedom Restoration Act of 1993 (RFRA).  The CFTC, an independent federal agency, has gagged the Commission Inspector General—the watchdog who, by act of Congress, oversees the agency—from speaking with any other Commission employee (such as Plaintiff, an attorney-advisor in the Commission's Office of the Inspector General) or any Commission contractor.

2.       Specifically, the Commission ordered, without limitation:  "**You are not to contact or communicate with any CFTC employee or contractor unless specifically instructed by the Commission to do so**."  (Hereinafter, the "Gag Order".)  A true and correct copy of the Gag Order (partly redacted) is annexed hereto as Exhibit A.

3.      The Gag Order followed leaked articles in the *Wall Street Journal* and other news organizations in which it was reported that the Commission had "voted 3-0 to place its inspector general, [name omitted], on 'non-duty status' while it considered what further action to take ….." Curiously, the Commission, a publicly-funded agency which claims "Transparency" as among its "Core Values", has issued no public statement on the matter, possibly because (as explained below) three votes is legally insufficient to remove an Inspector General.

4.      Since learning of this abhorrent and seemingly illegal directive, Plaintiff has not initiated any contact with the Inspector General, so as not to subject Plaintiff to employee discipline or worse for directly violating or aiding and abetting a violation of a Commission order, if the foregoing instruction is ultimately construed as such, for which civil and even criminal penalties may apply.

5.      Plaintiff, an attorney-advisor in the Commission's Office of the Inspector General, reports directly to the Inspector General.  Plaintiff has been delegated responsibility to open investigations, and currently oversees at least one investigation for which he is the sole attorney. The Commission has not directly informed employees as to the status of the current Inspector General.  Plaintiff was only notified of the appointment of an "Acting Inspector General," which is also listed on the contact information of the Commission's website.

6.      The Commission's interference with the Office of Inspector General (OIG), coupled with its unlawful Gag Order, has put Plaintiff in limbo, unable to communicate with the Inspector General to obtain guidance and direction, or even to properly relinquish his delegated authority during the pendency of this matter.  Indeed, the Gag Order further inhibits Plaintiff from contacting the Inspector General, a close friend and colleague, to inquire about his well-being and to offer prayer and support during what may be a difficult time for him.

7. Accordingly, as the nation approaches the Memorial Day holiday, in which we recognize the sacrifices so many have made to preserve our freedoms, Plaintiff brings this action to obtain, *inter alia*, the necessary declaration from the Court as to whom he should lawfully report with respect to pending, confidential investigations, a temporary, preliminary and permanent injunction prohibiting the Commission from enforcing its illegal prior restraint on Plaintiff's Constitutional rights of free speech and worship, and other relief permitted by statute and common law. Absent such relief, the CFTC is likely to continue to engage in the acts and practices alleged in this Complaint and in similar acts and practices, as more fully described below.

## JURISDICTION AND VENUE

8. This Court possesses subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Subject matter jurisdiction is also proper pursuant to the RFRA, which creates a heightened standard of review for government actions that substantially burden a person's exercise of religion.

9. Venue properly lies with the Manhattan Courthouse, as the CFTC maintains an office at 290 Broadway in Manhattan, and Plaintiff is assigned to this office.

## PARTIES

10. Plaintiff is a natural person residing in this District.

11. Defendant CTFC is an independent federal regulatory agency charged administering and enforcing the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.,* and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* The CFTC is comprised of five commissioners, each appointed by the President and confirmed by the Senate. Currently, there are no open seats; the Commission has a full complement of five commissioners.

12.    By statute, 7 U.S.C. § 2, the Commission has "exclusive jurisdiction," with certain exceptions, with respect to "accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an 'option', 'privilege', 'indemnity', 'bid', 'offer', 'put', 'call', 'advance guaranty', or 'decline guaranty'), and transactions involving swaps or contracts of sale of a commodity for future delivery (including significant price discovery contracts), traded or executed on a contract market … or a swap execution facility … or any other board of trade, exchange, or market," and certain other transactions.   The Commission's Mission Statement / Core Values includes a commitment to, *inter alia*: "Providing transparency to market participants about our rules and processes."

## FACTS

### Plaintiff's Background

13.    Plaintiff is an attorney duly admitted to practice law in the State of New York and in the District of Columbia.  During his first tour of duty with the Commission from 1998 through 2014, Plaintiff held several top positions with the CFTC, including, *inter alia*, Regional Counsel, Regional Administrator, and Chief Trial Attorney.

14.    During the 2008 Financial Crisis, from July 2008 to September 2010, Plaintiff served as Acting Director of the CFTC's Division of Enforcement.  From 2009 to 2010, he also co-chaired the Securities and Commodities Subcommittee of the President's Financial Fraud Enforcement Task Force.  While at the CFTC during his first tour of duty, Plaintiff was an advisor to senior management and presidential appointees on enforcement and policy matters; managed a heavy docket of investigations and litigations; and interacted frequently with federal authorities, self-regulatory organizations, and international regulators, including the Securities & Exchange Commission, Department of Justice, Federal Energy Regulatory Commission, National Futures

Association, Financial Industry Regulatory Authority, CFTC registrants, and financial conduct/services authorities in Dubai, Switzerland, and the United Kingdom.

15. This is Plaintiff's second tour of duty with the CFTC, having been hired in 2021 as an attorney-advisor in the Commission's Office of Inspector General ("OIG"). Prior to rejoining the Commission, Plaintiff was a partner at a well-known law firm.

16. Throughout his career, Plaintiff has received numerous awards and accolades. In 2001, he was presented with the Distinguished Service Award by the CFTC. In 2015, Plaintiff was awarded the Trailblazers Award for Regulatory & Compliance by the *National Law Journal*. And in 2018, he was presented with the Trailblazers Award by the *New York Law Journal Magazine*. His accomplishments and background have been chronicled in two books: *The Fix: How Bankers Lied, Cheated and Colluded to Rig the World's Most Important Number*, by Bloomberg Reporters Gavin Finch and Liam Vaughan, and *The Spider Network*, by David Enrich, Business Investigations Editor at the *New York Times*.

**<u>CFTC's Office of Inspector General</u>**

17. Statutory Inspectors General—established by law rather than administrative directive—are independent, nonpartisan officials whose aim is to prevent and detect waste, fraud, and abuse in the federal government. To execute their missions, Inspectors General lead offices of inspector general that conduct various reviews of agency programs and operations—including audits, investigations, inspections, and evaluations—and provide findings and recommendations to improve them. Inspectors General possess several authorities to carry out their respective missions, such as the ability to independently hire staff, access relevant agency records and information, and report findings and recommendations directly to Congress. A total of 74 statutory Inspectors General currently operate across the federal government.

18.     Observers have asserted that appointment and removal methods affect an IG's independence and effectiveness—both directly and indirectly.  Following the removal of several Inspectors General during the Obama and Trump Administrations, the issue of removal received particular attention in Congress.  In response, Congress addressed some of its principal concerns regarding removal and IG independence with provisions included in the FY2023 National Defense Authorization Act (NDAA), which, *inter alia*, now limit the circumstances under which Inspectors General can be removed or placed on non-duty status.

19.     The CFTC's Office of Inspector General operates as an independent watchdog within the much larger CFTC.  The OIG: (a) conducts and supervises audits and investigations of programs and operations of the CFTC; (b) recommends policies to promote economy, efficiency and effectiveness in CFTC programs and operations; and (c) detects and prevents waste, fraud and abuse in connection with CFTC programs and operations.  According to the latest Semi-Annual report for the CFTC's OIG, the CFTC's current Inspector General was appointed in 1990 and is recognized as the longest serving inspector general currently in the nation.

20.     According to the OIG's recent Semi-Annual Report, the CFTC's Inspector General may be only removed "upon the written concurrence of a 2/3 majority of the Commission."  5 U.S.C. App. §§ 8G(c), 8G(e)(1).  *See also* Congressional Research Service, Statutory Inspectors General in the Federal Government: A Primer," Updated Feb. 8, 2023 at 13.

21.     Given a full complement of five CFTC commissioners, as currently exists, mathematically more than three commissioners would have to affirmatively vote to remove the Inspector General (*i.e.*, 2/3 of 5 would be >3.3).

**The Purported Removal of the Inspector General**
**And Accompanying Gag Order**

22.     On or about May 3, the *Wall Street Journal* reported that: "The Commodity Futures

Trading Commission, which regulates derivatives markets, voted 3-0 to place its inspector general, [name omitted], on 'non-duty status' while it considered what further action to take, the people said. The agency informed leaders of several congressional committees of the move earlier this week, the people said.  A CFTC spokesman declined to comment because the agency's actions haven't been formally made public."  According to the same article, the purported grounds for the Commission's action included allegedly "outing whistleblowers."

23.     Upon information and belief, the Inspector General was informed of his placement on non-duty status on or about May 16, 2023.  Upon further information and belief, the document containing his Gag Order (*see* Exhibit A) was handed to him by the Executive Director of the CFTC, in the presence of the General Counsel, in the hallway of the Commission's DC offices as the Inspector General was leaving the building for a planned vacation.

24.     No notification of the Commission's decision was provided to the staff of the OIG at the time, or subsequently, other than a memorandum noting the appointment of an "Acting Inspector General" from another governmental agency.  (Contact information on the CFTC's website lists Dr. Brett M. Baker as "Acting Inspector General.")

25.     If published reports are accurate, the vote to place the Inspector General on "non-duty status" (and accompanying Gag Order) failed to receive the requisite four commissioner votes for passage, and accordingly is an *ultra vires* act of no force or effect.

26.     Plaintiff learned of the appointment of an acting IG on or about May 17.  On the evening of May 23, Plaintiff learned that the CFTC Inspector General had been placed on "paid administrative leave." In its Memorandum placing the Inspector General on administrative leave, dated May 16, 2023, the Commission stated the Inspector General "must comply" with a number of "instructions," including the Gag Order at issue in the present action.

27.     Specifically, Instruction Number 2 states:

**Your access to the CFTC networks has been temporarily limited.  You are not to contact or communicate with any CFTC employee or contractor unless specifically instructed by the Commission to do so."**

28.     The CFTC is a creature of statute, with only those powers Congress has expressly conferred upon it.  Upon information and belief, Congress has never conveyed upon the CFTC the power to issue prior restraints of its employees' First Amendment rights.

**<u>Plaintiff's Current Situation</u>**

29.     Plaintiff is an attorney advisor in the CFTC's OIG.  As a Commission employee, Plaintiff is required to follow CFTC policies and procedures, even those of dubious Constitutionality or legality, as the failure to do so can subject him to discipline, up to and including removal from federal service.  In the ordinary course, Plaintiff would look to the Inspector General for guidance as to the propriety of any Commission directive, but in this case, the Commission's Gag Order prohibits him from taking this action.

30.     Apart from his public service, Plaintiff is a practicing Christian with strongly held beliefs in the power of prayer to provide comfort and support in difficult times.  Plaintiff is an active member of the Walden United Methodist Church in Walden, New York.  In recent years, Plaintiff and the Inspector General have developed a friendly and cordial relationship.  The CFTC Inspector General has often inquired about Plaintiff's health, and on those occasions has ended the inquiry with words of comfort:  "I'll light a candle for you."

31.     The Gag Order places Plaintiff in an untenable position, both personally and professionally.  As noted above, if published reports are correct, one of the bases cited by the Commission as grounds for its actions was an alleged failure to abide by "whistleblower" protections.  The same whistleblower laws govern Plaintiff.  Given the current chaos in the OIG— with the current Inspector General seemingly not lawfully removed, and an "Acting" Inspector

General seemingly not lawfully hired—Plaintiff has been put at risk of making an improper whistleblower disclosure, should he report to the wrong supervisor.  There is at least one investigation where Plaintiff is the sole attorney.  To avoid any appearance of impropriety, Plaintiff has recused himself from all open investigations to file the instant case, but he cannot report on the status of those investigations until the agency chaos is cleared.

32.    Of equal importance to Plaintiff, on a personal level, Plaintiff desires to contact the Inspector General—an 86-year old widower—as a friend to offer a prayer to him as comfort, in what must be a harrowing and stressful time for him.  Plaintiff would like to tell the Inspector General that he will pray for him and "light a candle for him."

33.    Unfortunately, the CFTC's Gag Order prohibits all communications between the Inspector General and Plaintiff, even as to purely spiritual and other non-confidential governmental affairs.  Plaintiff knows of no Constitutional, statutory or regulatory basis for the CFTC to impose this extraordinary, sweeping prior restraint on his rights of freedoms of speech and worship, which run counter to the First Amendment.

34.    On top of these Constitutional safeguards, Congress has enacted the RFRA, which imposes a heightened standard of review for government actions—including rules of general applicability—that "substantially burden" a person's religious exercise. While the statute does not define "substantial burden," the phrase appears to have originated from free exercise caselaw, which holds that such burdens exist when an individual is required to choose between following his or her religious beliefs and receiving a governmental benefit, or when an individual must act contrary to his or her religious beliefs to avoid facing legal penalties.

35.    While discovery may reveal the true motivation behind this extraordinary restraint on speech and prayer, there is no need to speculate at this time about the purpose of the Gag Order,

including whether it is designed to obfuscate the placement of the Inspector General on paid administrative leave in contravention of the NDAA, or is part of a subterfuge to oust him without the requisite 2/3 majority statutory vote of the commissioners, or whether the Gag Order and press leaks have some other nefarious purpose, such as impeding investigations.  Rather, under the RFRA, the prior restraint is illegal, and should be enjoined.

36.    Importantly, when evaluating an individual's free exercise claim, courts should defer to parties' assertions about their sincerely held religious beliefs.  Once a party has established a substantial burden, the action is valid only if the government shows that the burden is (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of furthering that interest.  Such standard plainly cannot be met here by the CFTC.

## CLAIM FOR RELIEF

### COUNT ONE
### (VIOLATION OF THE FIRST AMENDMENT)

37.    The foregoing paragraphs are re-alleged and incorporated herein.

38.    By issuing the Gag Order, the Commission violated Plaintiff's Constitutional rights to freedom of speech and freedom to worship.

### COUNT TWO
### (VIOLATION OF THE RFRA)

39.    The foregoing paragraphs are re-alleged and incorporated herein.

40.    By issuing the Gag Order, the Commission violated the RFRA.

### COUNT THREE
### (DECLARATORY JUDGMENT)

41.    The foregoing paragraphs are re-alleged and incorporated herein.

42.    The actions of the Commission in purporting to place the CFTC's Inspector General on "non-duty status," and the Instructions in support thereof, including the aforementioned Gag

Order set forth in Instruction Number 2, were made without the "written concurrence of a 2/3 majority of the Commission" and accordingly are null and void.

43.   An actual controversy exists between the Parties as to the foregoing matters.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff respectfully requests that this Court enter:

a.   a declaratory judgment that the Commission's Gag Order, and the underlying removal of the Inspector General, are null and void;

b.   a temporary restraining order prohibiting enforcement of the Gag Order;

c.   orders of preliminary and permanent injunction prohibiting the Commission from enforcing the Gag Order;

d.   an order prohibiting retaliation against Plaintiff for bringing this action, or for acting in conformity with the Court's rulings;

e.   an order providing for expedited discovery, preservation of records, and other reemedies provided under the law, including the RFRA;

f.   monetary damages in an amount to be determined at trial, along with pre- and post-judgment interest at their statutory rates;

g.   attorney's fees and expenses pursuant to the RFRA, the Equal Access to Justice Act, and otherwise;

h.   allowable costs and fees; and

i.   such other and further remedial ancillary relief as the Court may deem appropriate.

Dated:   New York, New York
         May 28, 2023                    Respectfully submitted:

                                         EMMET, MARVIN & MARTIN, LLP

                                         _____

                                         John Dellaportas
                                         120 Broadway
                                         New York, NY 10271
                                         (212) 238-3000
                                         *Attorneys for Plaintiff Stephen Jay Obie*

**<u>EXHIBIT A</u>**



**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5521
*www.cftc.gov*

**The Commission**

# M E M O R A N D U M

**TO:**        ▮▮▮▮▮▮
                Inspector General

**FROM:**    The Commission

**DATE:**    May 16, 2023

**SUBJECT:**    Placement on Administrative Leave

This letter is to place you on notice that, effective on May 17, 2023, you are being placed on paid administrative leave. You must comply with the following instructions as long as you remain in administrative leave status:

1. Your access to the CFTC building will be restricted during this time. You are instructed not to come to the CFTC building for any reason at any time, unless specifically instructed by the Commission to do so.

2. Your access to the CFTC's networks has been temporarily limited. You are not to contact or communicate with any CFTC employee or contractor unless specifically instructed by the Commission to do so.

3. While on administrative leave, you must be available to be contacted by the Commission, through Chairman Behnam's Office, at any time, **Monday through Friday, 8:30 A.M. to 5:00 P.M.** You are instructed to provide Chairman Behnam with your current address and telephone number prior to your entry onto paid administrative leave today.

4. While on administrative leave, you must be available during your scheduled work hours to immediately report for duty at a time designated by the Commission.

5. While on administrative leave, if you need time off for matters normally appropriate for annual or sick leave, you are required to request and obtain approval for such leave from the Commission, through Chairman Behnam's Office.

6. If you are not on approved annual or sick leave, you must remain in the local commuting area during your scheduled hours and days.

Failure to comply with any of the above instructions may result in your administrative leave being terminated and you being placed on Absent Without Leave (AWOL) which may lead to administrative action up to and including your removal from the Federal Service.

Page 2

Please be reminded that any outside employment from CFTC must be approved in advance. Should you need to do this, you may submit a Request for Approval of Outside Employment (CFTC Form 20) to Chairman Behnam for review and approval/denial.

During this time your access to the building is restricted and you are required to turn in your PIV card. If you are not in possession of your PIV card at this time, you are instructed to return it to me via mail immediately.

If you are currently facing difficult issues in your personal life, I urge you to contact the Employee Assistance Program (EAP) on ▮▮▮▮▮▮▮▮▮. The EAP has qualified counselors available 24 hours a day, 7 days a week, who can provide expert guidance and counseling. The EAP is a confidential, free, and voluntary service and your discussions with an EAP counselor will not be disclosed to anyone, including me, without your permission and your participation will not be noted in your OPF.

If you have any questions, you may contact ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮.

Please sign the receipt acknowledgement copy of this letter as evidence that you have received this letter. Your signature does not mean that you agree or disagree with its contents.

**EMPLOYEE SIGNATURE:** _____    **DATE:** _____

**DELIVERED BY:** ▮▮▮▮▮▮▮▮▮▮▮▮▮    **DATE:** 5/16/2023