UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Stephen Jay Obie,

                    Plaintiff,

            v.

Commodity Futures Trading Commission,

                   Defendant.

23 Civ. 4459

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO SHOW CAUSE FOR A
TEMPORARY RESTRAINING ORDER, PRELIMINARY
INJUNCTION AND EXPEDITED DISCOVERY**

Emmet, Marvin & Martin, LLP
120 Broadway
New York, NY 10271
(212) 238-3200
*Attorneys for Plaintiff
Stephen Jay Obie*

Plaintiff Stephen Jay Obie ("Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion to Show Cause for a Temporary Restraining Order, Preliminary Injunction and Expedited Discovery against defendant Commodity Futures Trading Commission ("CFTC or the "Commission").[1]

## INTRODUCTION

The United States is the greatest nation the earth has ever seen, founded on the principles of freedom, liberty, and the rule of law. This case involves the federal government's illegal prior restraint on two freedoms granted by the Constitution, freedom of speech and freedom of religion, in violation of the First Amendment and the Religious Freedom Restoration Act of 1993 (RFRA). The CFTC, an independent federal agency, has prohibited its own Inspector General—the watchdog who, by act of Congress, is charged with overseeing the agency—from speaking with any other Commission employee (such as Plaintiff, an attorney-advisor in the Commission's Office of Inspector General) or with any Commission contractor.

Specifically, the Commission has ordered, without limitation: "**You are not to contact or communicate with any CFTC employee or contractor unless specifically instructed by the Commission to do so**" (the "Gag Order"). Decl.. Exh. C. The Gag Order followed leaked articles in the *Wall Street Journal* and elsewhere that the Commission had "voted 3-0 to place its inspector general, [name omitted], on 'non-duty status' while it considered what further action to take ….." As of now, the Commission—a publicly-funded agency that claims "Transparency" as among its "Core Values"—has issued no public statement on the matter, possibly because (as explained below) three votes is legally insufficient to remove its Inspector General.

---

[1]     Factual citations are to the accompanying Declaration of Stephehn Jay Obie ("Decl.") and the exhibits thereto, and to the Complaint filed in this action ("Compl."), a copy of which is annexed as Exhibit B to the aforementioned Obie Declaration.

Since learning of this abhorrent, illegal directive, Plaintiff has not initiated any contact with the Inspector General, so as not to subject Plaintiff to employee discipline or worse for directly violating or for aiding and abetting a violation of a Commission order (if the foregoing instruction is ultimately construed as such), for which civil or even criminal penalties may apply.  Instead, Plaintiff reached out to the Commission, through counsel, to see if these gross infringements on his civil liberties were perhaps unintentional, and this matter could be resolved on consent.  As it turns out, these infringements were intentional. Decl. §§ 3, 9, Exh. A.

Plaintiff, an attorney-advisor in the Commission's Office of the Inspector General (OIG), reports directly to the Inspector General.  The Commission has not directly informed Plaintiff nor the other employees of the OIG as to the employment status of the current Inspector General. Plaintiff was only notified of the appointment of an "Acting Inspector General," whose name is now also listed on the Commission's website.  As set forth below, the Commission's interference with the OIG, coupled with its unlawful Gag Order, have left Plaintiff unable to communicate with his supervisor, the Inspector General, to obtain direction, or even to properly relinquish his delegated authority during the pendency of this matter. Decl. §§ 10-11.

As described below, the Gag Order is so overbroad that it even prohibits Plaintiff from contacting the Inspector General, a close friend and colleague, to inquire about his well-being and to offer prayer and support during what may be a difficult time for him.  Accordingly, Plaintiff now brings this motion to restrain and enjoin the Commission from enforcing its illegal prior restraint on Plaintiff's Constitutional rights of free speech and worship.

## FACTS

Defendant CTFC is an independent federal regulatory agency charged administering and enforcing the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.,* and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*  The CFTC is comprised of five commissioners, each appointed

by the President and confirmed by the Senate.  The Commission's Mission Statement / Core Values includes a commitment to, *inter alia*: "Providing transparency to market participants about our rules and processes." Compl. § 12.

Plaintiff is an attorney admitted to practice law in the State of New York and the District of Columbia.  During his first tour of duty with the Commission from 1998 through 2014, Plaintiff held several top positions with the CFTC.  During the 2008 Financial Crisis, through September 2010, Plaintiff served as Acting Director of the CFTC's Division of Enforcement.  From 2009 to 2010, he also co-chaired the Securities and Commodities Subcommittee of the President's Financial Fraud Enforcement Task Force. Decl. § 5.  Throughout his career in public service, Plaintiff has received numerous awards and accolades. Compl. § 16.

Inspectors General are independent, nonpartisan officials whose mission is to prevent and detect waste, fraud and abuse in federal government.  To execute this mission, Inspectors General lead offices that conduct various reviews of agency programs and operations—including audits, investigations, inspections, and evaluations—and provide findings and recommendations on how to make improvements.  Inspectors General possess several authorities to carry out their missions, such as the ability to independently hire staff, access relevant agency records and information, and report findings and recommendations directly to Congress.  A total of 74 statutory Inspectors General operate across the federal government. Compl § 17.

For an Inspector General, independence is essential.  After several Inspectors General were removed during prior administrations, the issue of removal drew the attention of Congress, which enacted several new provisions, as part of the FY2023 National Defense Authorization Act, designed to strengthen Inspector General independence. Compl. § 18.

The CFTC's Office of Inspector General serves as the watchdog of the much larger CFTC. Its mission includes detecting and preventing waste, fraud and abuse in connection with CFTC

programs and operations.  According to the latest Semi-Annual report for the CFTC's OIG, the CFTC's current Inspector General was appointed in 1990, and is recognized as the longest serving Inspector General in the nation.  By statute, the CFTC's Inspector General may be only removed "upon the written concurrence of a 2/3 majority of the Commission." 5 U.S.C. § 415(e)(1).  Given the current full complement of five CFTC commissioners, that means at least four would have to affirmatively vote to remove the Inspector General. Compl. §§ 19-21.

On May 3, 2023, the *Wall Street Journal* reported that: "The Commodity Futures Trading Commission, which regulates derivatives markets, voted 3-0 to place its inspector general, [name omitted], on 'non-duty status' while it considered what further action to take, the people said. The agency informed leaders of several congressional committees of the move earlier this week, the people said.  A CFTC spokesman declined to comment because the agency's actions haven't been formally made public."  According to the same article, the purported grounds for the Commission's action included allegedly "outing whistleblowers." Compl. § 6.

No notification of the Commission's decision was provided to the staff of the OIG at the time, or subsequently, other than a memorandum noting the appointment of an "Acting Inspector General" from another governmental agency.   Plaintiff only learned of that appointment on or about May 17.  On the evening of May 23, Plaintiff further learned that the current Inspector General had been placed on "paid administrative leave" pursuant to a May 16, 2023 Memorandum, in which the Commission had issued its Gag Order directing the Inspector General that: "**You are not to contact or communicate with any CFTC employee or contractor unless specifically instructed by the Commission to do so.**" Decl. § 7, Exh C.

As an attorney-advisor in the OIG, Plaintiff has been delegated responsibility to open investigations, and currently oversees at least one investigation for which he is the sole attorney. The Commission's actions have left Plaintiff in limbo, unable to communicate with the Inspector

General to obtain guidance and direction, or even to properly relinquish his delegated authority during the pendency of this action.  The chaos in the OIG has also put Plaintiff in the position of risking disclosing confidential whistleblower information to someone not duly authorized to receive it; to wit, the Acting Inspector General. Decl. §§ 11, 18.

Of particular relevance here, the Gag Order prevents Plaintiff from contacting the Inspector General, an 86-year-old widower, to inquire about his well-being and to offer prayer and support during what may be a difficult time for him.  As explained in his Declaration, Plaintiff is a practicing Christian with strongly held beliefs in the power of prayer to provide comfort and support in challenging times.  He is an active member of the Walden United Methodist Church in Walden, New York.  In recent years, the Inspector General and Plaintiff have developed a friendly and cordial relationship. The Inspector General has often inquired about Plaintiff's health, and on those occasions has ended the inquiry with words of comfort:  "I'll light a candle for you."  Given all that has transpired, Plaintiff desires to reach out to his friend to pray with him, and to convey to him that Plaintiff will "light a candle for him."  Decl. §§ 12-13.

Unfortunately, the CFTC's Gag Order prohibits <u>all</u> communications between Plaintiff and the Inspector General, even as to spiritual or other non-confidential matters.  As a Commission employee, Plaintiff must follow CFTC policies and procedures, even those of dubious legality, or potentially be subject to discipline. Decl. § 15.  Plaintiff hereby moves to temporarily restrain and preliminarily enjoin the CFTC from enforcing its Gag Order as to his communications with the Inspector General, or from retaliating against him for this action.

## ARGUMENT

Under Rule 65(a), a Court may issue a preliminary injunction when "the party seeking the injunction demonstrates (1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently

serious questions going to the merits to make them a fair ground for litigation, and [3] that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of N.Y.,* 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted).  Under Rule 65(b), a Court may issue a temporary restraining order pending a hearing on a preliminary injunction.

### I.    **Irreparable Injury**

Plaintiff satisfies the three-part test.  First, "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)) (citations omitted).  Those First Amendment freedoms include the Free Exercise Clause, which provides that "Congress shall make no law ... prohibiting the free exercise" of religion. Amdt. 1.  It protects "the performance of (or abstention from) physical acts that constitute the free exercise of religion." *Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (citation omitted).

As he has attested, Plaintiff is a devout, Church-going Christian who has a deeply held desire to contact his friend and colleague, "the Inspector General, an 86-year-old widower, during off-hours at his home, to inquire about his well-being and to offer prayer and support during what may be a difficult time for him." Obie Decl. § 12.  By its refusal last night to consent to an even limited TRO (Decl. Exh. A), the CFTC has confirmed that when it issued a blanket Gag Order directing the Inspector General "not to contact or communicate with any CFTC employee or contractor unless specifically instructed by the Commission to do so" (*Id.* Exh. C), the agency intended to bar all communications, even spiritual ones.

In sum, law school textbook authors would struggle to come up with a more clear-cut infringement of First Amendment freedoms than the Commission's actions against Plaintiff in this regard.  Irreparable injury has been established.

## II.   <u>Likelihood of Success</u>

Plaintiff—who devoted his career to CFTC, rising to Acting Director of Enforcement during the 2008-2010 Financial Crisis (Decl. § 5)—is unaware of any statute or regulation empowering the Commission to issue nonconsensual gag orders. Compl. § 33.  The agency is a creature of statute, with only those powers Congress confers upon it. *See Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 374 (1986); *Lyng v. Payne*, 476 U.S. 926, 937 (1986).  Prior restraints on the exercise of speech and religion is not one of them.

That, alone, should be the beginning and end of the likelihood of success analysis, but here there is also the Religious Freedom Restoration Act of 1993 (RFRA).  The RFRA "prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means." *Tanzin v. Tanvir*, 141 S.Ct. 486, 489 (2020) (citing 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq*.).  The RFRA "gives a person whose religious exercise has been unlawfully burdened the right to seek 'appropriate relief.'" *Id.*  Congress passed the RFRA in the wake of the Supreme Court's decision in *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U. S. 872 (1990), which held that the First Amendment permits neutral laws that burden religious acts even when the laws are unsupported by a narrowly tailored, compelling governmental interest. *Id.*  The RFRA then restored the pre-*Smith* "compelling interest test" by "provid[ing] a claim ... to persons whose religious exercise is substantially burdened by government." *Id.* (citing §§2000bb(b)(1)-(2)).

There can be no question that barring a joint prayer, absent a compelling, countervailing governmental interest, is unlawful.  As the Supreme Court explained in *Kennedy v. Bremerton School District*, 142 S.Ct. 2407, 2421 (2022), the Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily

life through the performance of (or abstention from) physical acts." (Citation omitted). "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). As the CFTC has no countervailing interest of any kind in restricting Plaintiff's prayer, let alone a compelling one, its actions are clearly unlawful.

Even in the absence of the RFRA, the Gag Order would contravene the First Amendment, which further provides that: "Congress shall make no law … abridging the freedom of speech." Amdt. 1. Plaintiff's First Amendment rights extend well beyond just religious observance. For free speech rights involving government employees, the Supreme Court has long recognized that "a citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. … So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

Even if the Commission did have some sort of compelling governmental interest in restricting communications as to certain issues between Plaintiff and the Inspector General, the blanket Gag Order certainly would not constitute "the least restrictive means" for achieving that interest. *Tanzin, supra*. The Gag Order prohibits Plaintiff from contacting the Inspector General, an 86-year-old widower, during off-hours at his home, to inquire about his well-being and to offer prayer and support during what may be a difficult time for him. Nor, under the Gag Order, may Plaintiff call the Inspector General to invite him out to dinner to discuss books they are reading, the places they have recently visited, or their health issues and concerns. Or, even the fact that Plaintiff  has filed the instant lawsuit. Decl. § 12.

Further there is no question that the actions taken by the Commission against the Inspector General are a matter of public concern—they have been reported in the *Wall Street Journal* and numerous other media outlets. Decl. § 9.  While the CFTC may have some rationale for prohibiting Plaintiff and the Inspector General from discussing confidential, open investigations while the Commission tries to force the latter out the door, what possible justification could it have for its blanket prohibition on Plaintiff speaking with the Inspector General?  Given that the CFTC itself has been gleefully leaking details of its actions against the Inspector General to any reporter who will pick up the phone, it can hardly claim confidentiality on that subject now.

Lastly, the Supreme Court has, in the past, held that "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick v. Myers*, 461 U.S. 138, 151-52 (1983).  That line of cases has no applicability here.  The five commissioners of the CFTC are not Plaintiff's "employer."  As noted above, the OIG in which Plaintiff works was established by Act of Congress to be wholly independent of the agency it regulates.  The CFTC's ability to interfere in the operations of its own independent watchdog agency is strictly limited by statute to the removal of the Inspector General upon a 2/3 vote (which apparently did not happen here).  For the Commission to try to regulate the speech of its watchdog is wholly repugnant to that Congressional intent.

In sum, Plaintiff has established a likelihood of success.

### III. **Balance of Hardships**

Lastly, the balance of hardships tips decidedly in favor of Plaintiff.  The Commission will endure no hardship at all, should Plaintiff resume communicating with the man who is still his direct supervisor, as he has done for years.  For Plaintiff, by contrast, "[t]he Commission's actions have left me in limbo, unable to communicate with the Inspector General to obtain guidance and direction, or even to properly relinquish my delegated authority during the pendency of this

matter." Decl. § 11.  The dueling Inspectors General are "creating chaos, and puts me in the position of potentially disclosing confidential whistleblower information to someone not duly authorized to receive it; to wit, the Acting Inspector General." *Id.* § 18.  The Court should step in to clear the chaos, through the equitable relief sought in this motion.

### IV.  <u>Temporary Restraining Order</u>

Lastly, a temporary restraining order should be granted pursuant to Fed.R.Civ.P. 65(b). (As noted above, the Commission is on notice of this proceeding and this motion, so this will not be an *ex parte* application.)  In his Declaration, Plaintiff attests that: "Given the Inspector General's age, health, and current situation, and the press attacks currently being leaked against him, every day that passes without my being able to reach out to my friend with prayer and support gives me cause for greater concern." Decl. § 11.  As "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury," *N.Y. Progress & Prot. PAC*, *supra*, the time to restrain the irreparable injury is now.

### CONCLUSION

Accordingly, for all of the foregoing reasons, and the reasons set forth in his motion papers, Plaintiff respectfully requests that his motion be granted in full.

Dated:  New York, New York
   May 30, 2023    Respectfully submitted:

            EMMET, MARVIN & MARTIN, LLP

            _____
            John Dellaportas
            120 Broadway
            New York, NY 10271
            (212) 238-3000
            *Attorneys for Plaintiff Stephen Jay Obie*