UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN JAY OBIE,<br><br>                              Plaintiff,<br><br>            -against-<br><br>COMMODITY FUTURES TRADING COMMISSION, et al.,<br><br>                              Defendants. | 23-CV-4459 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

The Commodity Futures Trading Commission ("CFTC") issued a memorandum to its former Inspector General, following an investigation into the Inspector General's conduct, forbidding him from contacting or communicating with any CFTC employee unless specifically authorized by the CFTC to do so. Plaintiff Stephen Jay Obie, a CFTC employee at the time, alleges that because of the CFTC's order, he was prohibited from praying with the Inspector General. Obie alleges that such a prohibition substantially burdened his religious exercise, in violation of the Religious Freedom Restoration Act ("RFRA"). The Court GRANTS Defendants' motion to dismiss in full, finding that the Commissioners in their individual capacities are entitled to qualified immunity, the CFTC and the Commissioners in their official capacities are entitled to sovereign immunity, a declaratory judgment is not an independent cause of action, and Plaintiff does not have standing to seek a declaratory judgment.

## BACKGROUND

In May 2023, the CFTC voted to place its former Inspector General, A. Roy Lavik, on "non-duty status." ECF No. 35 ("Amended Complaint" or "Am. Compl.") ¶ 34. Three CFTC commissioners, Kristin N. Johnson, Summer K. Mersinger, and Christy Goldsmith Romero

(collectively, in their individual capacities, the "Commissioner Defendants"), voted to place the Inspector General on leave, while the other two CFTC commissioners abstained. *Id*. ¶ 35.

The Inspector General was informed of his placement on non-duty status on or about May 16, 2023. *Id*. ¶ 36. On that day, the CFTC Commission issued a memorandum to the Inspector General (the "Order"), stating that he must comply with certain instructions. *Id*. ¶ 37. In part, the Order stated:

> Your access to the CFTC network has been temporarily limited. You are not to contact or communicate with any CFTC employee or contractor unless specifically instructed by the Commission to do so.

*Id*.; ECF No. 35, Ex. A. Plaintiff learned of the appointment of an Acting Inspector General the next day. Am. Compl. ¶ 36. On May 23, 2023, Plaintiff learned that the Inspector General had been placed on paid administrative leave. *Id*.

Plaintiff, at the time an employee at the CFTC, wanted to contact his friend, the Inspector General, to offer a prayer to him as comfort. *Id*. ¶¶ 27, 43. Plaintiff is a practicing Christian and active member of the Walden United Methodist Church, with strongly held beliefs in the power of prayer to provide comfort and support in difficult times. *Id*. ¶ 42. He and the Inspector General developed a friendly and cordial relationship. *Id*. The Inspector General has often inquired about Plaintiff's health and has ended the inquiry with words of comfort: I'll light a candle for you. *Id*. Plaintiff wanted to offer a prayer to the Inspector General, his friend, as comfort, telling him that he would pray for him and "light a candle for him." *Id*. ¶ 43.

Plaintiff became aware of the Order issued to the Inspector General. *Id*. ¶ 4. Plaintiff alleges that the Order prohibited all communications between the Inspector General and Plaintiff, even as to purely spiritual and other non-confidential governmental affairs. *Id*. ¶ 44. Although the Order names only the Inspector General, Plaintiff, as a close friend and colleague at the CFTC "was necessarily implicated." *Id*. ¶ 39. As an employee of the CFTC, Plaintiff is required to

follow CFTC policies and procedures. *Id*. ¶ 41. In the ordinary course, Plaintiff would have looked to the Inspector General for guidance as to the propriety of any CFTC directive, but according to Plaintiff, the Order prohibited him from doing so. *Id*.

## PROCEDURAL HISTORY

Plaintiff brought this action against the CFTC on May 28, 2023, to obtain judicial relief to permit him to communicate with the Inspector General. *Id*. ¶ 4; ECF No. 1. The next day, Plaintiff's counsel reached out to the CFTC's General Counsel to request that the CFTC consent to the requested relief, which the CFTC declined to do. Am. Compl. ¶ 4. On May 30, 2023, Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction. ECF No. 3. Judge Oetken, to whom the case was previously assigned, held a conference the next day. ECF No. 23.

During this conference, the CFTC's counsel stated that "[t]he inspector general could not have a call or have a meal with plaintiff under the terms of this directive . . . . If the inspector general were to comply with the directive, he would not be able to pray with plaintiff. Am. Compl. ¶ 6; ECF No. 23 at 8:5–6, 9:13–15. The CFTC's counsel also raised the issue that at that time, Plaintiff had not established or even alleged that the Inspector General was a willing speaker who wanted to communicate with Plaintiff. ECF No. 24 at 7:10–21; 9:16–17; 13:17–19. The CFTC then submitted a letter reiterating that it opposed Plaintiff's request for a TRO and that any alteration to the Order would require a vote by the Commissioners. Am. Compl. ¶ 8; ECF No. 11.

On June 1, 2023, the Inspector General filed a declaration stating that he would "very much like to engage with Plaintiff and other [Office of the Inspector General] employees in joint prayer and communications not implicating CFTC matters, including telling Plaintiff that [he

3

would] 'light a candle' for him. Am. Compl. ¶ 40; ECF No. 13 ("Lavik Declaration") ¶ 5. The next day, the CFTC changed its position. ECF No. 14. The CFTC stated that the Lavik Declaration made clear for the first time that the Inspector General wished to pray with Plaintiff and that the CFTC "has no opposition to Mr. Lavik engaging in prayer with others, including Plaintiff, and affirms that Mr. Lavik will not be deemed in violation of the administrative leave order for engaging in such prayer." *Id*.

On June 7, 2023, the CFTC issued a clarifying instruction regarding the Order, which stated:

> Unless specifically instructed by the Commission to do so, you are not to contact or communicate with any CFTC employee or contractor while you are on administrative leave about matters related to the subjects of CIGIE Investigative Report, Case 986, your work at the CFTC, your employment at the CFTC, or nonpublic matters relating to the work of the CFTC Office of Inspector General or the Commission, including any pending investigations or litigations involving the CFTC or the Office of Inspector General. Engaging in prayer with others, including CFTC employees or contractors, will not be deemed a violation of this instruction.

ECF No. 16.

On June 17, 2023, the Inspector General retired from the CFTC, resulting in him no longer being on administrative leave or subject to the modified Order, and, according to Defendant, the motion for a TRO and preliminary injunction becoming moot. ECF No. 25. Plaintiff agreed, insofar as Plaintiff and the Inspector General were able to "communicate with one another as any other two free citizens would." ECF No. 26. Subsequently, Judge Oetken denied Plaintiff's motion for a TRO and preliminary injunction as moot. ECF No. 27. Plaintiff retired from the CFTC on August 26, 2023. ECF No. 46 ("Short Decl.") ¶¶ 3–4.

The matter was reassigned to the undersigned on July 20, 2023. The Amended Complaint was filed on August 15, 2023, adding Johnson, Mersinger, and Goldsmith Romero, in their official and individual capacities, as parties (Johnson, Mersinger, and Goldsmith Romero in their

official capacities, along with the CFTC, "Federal Defendants," and together with the Commissioner Defendants, "Defendants"). Am. Compl. Defendants filed their motions to dismiss on October 19, 2023. ECF Nos. 45, 48. Plaintiff filed a cross-motion for summary judgment on November 20, 2023, ECF No. 52, which it then amended as an opposition to the motions to dismiss. ECF No. 62. The motions were fully briefed as of January 5, 2024. ECF No. 63.

## LEGAL STANDARD

The Court sets forth the legal standards governing motions to dismiss for lack of subject matter jurisdiction and failure to state a claim.

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. (internal citation omitted). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal citation omitted). A court may also consider evidence outside the pleadings, such as affidavits and exhibits. *See Makarova*, 201 F.3d at 113.

### II. Motion to Dismiss for Failure to State a Claim

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)

(internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

The Court first finds that the Commissioner Defendants have succeeded in demonstrating that they are entitled to qualified immunity from the RFRA claim. The Court next analyzes the RFRA cause of action as to the Federal Defendants, holding that sovereign immunity bars the claim against the Federal Defendants. The Court then dismisses Plaintiff's cause of action for a declaratory judgment, because there cannot be a standalone claim for a declaratory judgment and because Plaintiff does not have standing to bring such a claim. Plaintiff's request for leave to amend the Amended Complaint is denied.

### I. Qualified Immunity Bars the RFRA Claim against the Commissioner Defendants

"[Q]ualified immunity shields federal and state officials from money damages unless the plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022), *cert. dismissed*, 143 S. Ct. 2694 (2023) (quoting

*Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019)). "To determine whether defendants enjoy qualified immunity, 'we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.'" *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014)). Because qualified immunity is an affirmative defense, the defendant bears the burden of proof. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

Courts are "sensitive to the notion that qualified immunity should be resolved 'at the earliest possible stage in the litigation.'" *Tanvir v. Tanzin*, 894 F.3d 449, 472 (2d Cir. 2018) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). At the same time, "qualified immunity is an affirmative defense that is typically asserted in an answer" and "as a general rule, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion." *Chamberlain Est.*, 960 F.3d at 110 (cleaned up). The facts supporting the defense must appear on the face of the complaint and the motion will be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal citation omitted). "[P]laintiffs are entitled to all reasonable inferences from the facts alleged, not only those that support their claim, but also those that defeat the immunity defense." *Sabir*, 52 F.4th at 64 (internal citation and quotation marks omitted).

Assuming without deciding that the Order violated RFRA, the Court turns to whether "the right at issue was clearly established at the time of the challenged conduct." *Sabir*, 52 F.4th at 63 (cleaned up); *see also Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)) ("[T]he dispositive question is 'whether the violative nature of

7

*particular* conduct is clearly established.'"). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Vega v. Semple*, 963 F.3d 259, 274 (2d Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This is to prevent officials from lacking a "fair warning that his or her actions were unlawful." *Id*. (quoting *Terebesi*, 764 F.3d at 230); *see also Hurd v. Fredenburgh*, 984 F.3d 1075, 1089 (2d Cir. 2021) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009)) ("The principle of qualified immunity ensures that before they are subjected to suit, officers are on notice their conduct is unlawful."). Although "the absence of a decision by this Court or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established," there must be "preexisting law [that] clearly foreshadows a particular ruling on the issue." *Sabir*, 52 F.4th at 63 (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015)).

      Here, the Commissioners lacked fair warning that their conduct was unlawful. A timeline of Plaintiff's allegations is useful in understanding why. The Order was issued on May 16, 2023. The next day, Plaintiff learned of the appointment of an Acting Inspector General and on May 23, 2023, learned that the Inspector General had been placed on paid administrative leave. It is not clear on what date Plaintiff learned of the contents of the Order. On May 28, 2023, Plaintiff filed this action to obtain judicial relief to permit him to engage with the Inspector General in joint prayer. Plaintiff did not allege that he, or the Inspector General, requested this permission in advance of filing suit. The day after filing suit, Plaintiff's counsel reached out to the CFTC's General Counsel to request such permission, which was, at that time, denied. On May 30, 2023, Plaintiff moved for a TRO and preliminary injunction. Judge Oetken, to whom the case was

8

previously assigned, held a conference on May 31, 2023. During that conference, counsel for the CFTC noted that Plaintiff had not established or alleged that the Inspector General wanted to engage in joint prayer with Plaintiff. On June 1, 2023, the Inspector General filed a declaration stating that he would like to engage in joint prayer with Plaintiff. The very next day, the CFTC stated that it had no opposition to the Inspector General engaging in prayer with others, including Plaintiff, and permitted the Inspector General to do so.

The Court could find no Second Circuit or Supreme Court case where a similar order was found to violate RFRA. Instead, in the only case that the parties cited and the Court reviewed with similar facts, the court granted qualified immunity. *See Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 253 (S.D.N.Y. 2009) (holding that defendants were entitled to qualified immunity when they directed the plaintiff not to have communication with any other employee). The Court also could not find any case where individual defendants issued a religiously neutral policy, were later informed that such policy restricted religious activity, then almost immediately permitted the requested religious activity, but were nonetheless found to have violated RFRA. And the Court doubts that any such case exists.

Plaintiff relies on *Sabir* to argue against qualified immunity. That case, however, does not help Plaintiff. In *Sabir,* the wardens of a correctional facility "enforced a policy that restricted prayer in groups of more than two to the prison's chapel." *Sabir,* 52 F.4th at 54. Plaintiffs, practicing Muslims, alleged that their sincerely held religious beliefs required them to participate in group prayer multiple times a day. *Id*. at 55. They claimed that corrections officers prohibited them from praying in groups outside of the chapel. *Id*. The Court rejected the corrections officers' claim of qualified immunity, concluding that the policy denying the right to joint prayer without any justification or compelling interest violated clearly established law. *Id*. at 64–66.

9

The facts in *Sabir* are readily distinguishable. The policy in *Sabir* was expressly directed at restricting joint prayer, and it was a policy enforced on the plaintiffs in that case. The Order here was not directed at joint prayer, at any religious activities whatsoever, or even at Plaintiff in this case. And, once the Commissioners were notified that Plaintiff and the Inspector General sought to engage in joint prayer, they permitted it. *Sabir* would not have provided any notice to the Commissioners that issuing an order preventing the Inspector General from communicating with other employees and then within days permitting the Inspector General to engage in joint prayer with an employee who sought to do so would substantially burden that employee's right to joint prayer. Nothing in *Sabir* stands for this proposition or would foreshadow this result.

Accordingly, this is the rare case that it is apparent prior to discovery that the Commissioner Defendants are entitled to qualified immunity. *See Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 191 (2d Cir. 2020) (affirming grant of motion to dismiss based upon qualified immunity).

**II.        Sovereign Immunity Bars the RFRA Claim against the Federal Defendants**

Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *Loeffler v. Frank*, 486 U.S. 549, 554 (1988) (internal citation omitted); *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) ("The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities."). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. *Lane v. Pena*, 518 U.S. 187, 192 (1996) (cleaned up). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id*. The plaintiff bears the burden of

demonstrating that sovereign immunity has been waived. *Makarova*, 201 F.3d at 113 (internal citation omitted).

RFRA provides that an individual may "obtain appropriate relief against a government" when that individual's "religious exercise has been burdened in violation of" RFRA. 42 U.S.C. § 2000bb-1(b). Courts within the Second Circuit have held that "this language does not demonstrate the clear intent necessary to effect a congressional abrogation of the government's sovereign immunity from suits for damages." *Johnson v. Killian*, No. 07-CV-6641 (NRB), 2013 WL 103166, at *3 (S.D.N.Y. Jan. 9, 2013) (citing *Gilmore–Bey v. Coughlin*, 929 F. Supp. 146, 149–51 (S.D.N.Y. 1996) and *Commack Self–Service Kosher Meats Inc. v. State of N.Y.*, 954 F. Supp. 65, 67–70 (E.D.N.Y. 1997)); *see also McIntosh v. United States*, No. 15-CV-2442 (KMK), 2018 WL 1275119, at *8 (S.D.N.Y. Mar. 7, 2018) (noting that neither the Supreme Court nor any circuit courts have held that RFRA provides for money damages and that circuit courts have instead found that RFRA did not waive sovereign immunity for money damages against the United States or its agents acting in their official capacity).

More recently, in *Tanzin v. Tanvir*, the Supreme Court held that the term "appropriate relief" as utilized in RFRA includes claims for money damages against government officials in their individual capacities. 592 U.S. 43, 45 (2020). In doing so, the Court noted that its opinion in *Sossamon v. Texas*, 563 U.S. 277 (2011), which held that a state's acceptance of federal funding did not waive sovereign immunity to suits for damages under the Religious Land Use and Institutionalized Persons Act of 200 ("RLIUPA"), did not compel a different result, because the "obvious difference" is that *Tanzin* "features a suit against individuals, who do not enjoy sovereign immunity." *Id*. at 51–52.

11

No court in the Second Circuit citing *Tanzin* has held that RFRA waives the Government's sovereign immunity for money damages. And other courts following *Tanzin* have consistently held that RFRA does not waive the Government's sovereign immunity for money damages. *See, e.g.*, *Driever v. United States*, No. 19-CV-1807 (TJK), 2021 WL 1946391, at *3 (D.D.C. May 14, 2021) (internal citation and quotation marks omitted) (stating that the Supreme Court's "determination that RFRA does not waive the federal government's sovereign immunity for damages remains faithful to Circuit precedent"); *Schelske v. Austin*, No. 22-CV-49 (JWH), 2023 WL 5986462, at *30 (N.D. Tex. Sept. 14, 2023) (holding that defendants were entitled to sovereign immunity from a RFRA claim because they were sued in their official capacities); *Hayford v. Fed. Bureau of Prisons*, No. 23-CV-3011 (JWL), 2023 WL 1927267, at *3 (D. Kan. Feb. 10, 2023) (stating that sovereign immunity bars any claim for damages against defendants, who were United States agencies). Accordingly, the Court finds Plaintiff's argument that *Tanzin* left open the door to RFRA money damages against government agencies and officials in their official capacities, *see* ECF No. 62 ("Pl. Opp.") at 20–21, to be unavailing.

Plaintiff's argument that he seeks "such other and further relief as the Court may deem appropriate," such as "injunctive relief against the CFTC under the RFRA, as well as potential reinstatement," *id*. at 21, does not save Plaintiff's claim. The Amended Complaint does not request injunctive relief or any other specific non-monetary relief for the RFRA claim, and, as discussed *infra* Section III(C), Plaintiff does not have standing to seek declaratory relief. And the general request for "other and further relief" is insufficient to maintain the RFRA claim. *See Bogle-Assegai v. Comm'n on Hum. Rts. & Opportunities*, 331 F. App'x 70, 71–72 (2d Cir. 2009) (holding that plaintiff could not maintain a claim for money damages due to sovereign immunity and that plaintiff was not entitled to press claims for declaratory and injunctive relief, because

"although [plaintiff] stated in the jurisdictional section of her complaint that her action was for declaratory and injunctive relief, she did not actually request any specific declaratory or injunctive relief"); *Makas v. Orlando*, No. 06-CV-14305 (DAB), 2008 WL 1985407, at *5 (S.D.N.Y. May 6, 2008). Accordingly, Plaintiff's claim under RFRA against the Federal Defendants is dismissed.

### III. Plaintiff's Cause of Action for a Declaratory Judgment Is Dismissed

#### A. The Court Declines to Address Whether Sovereign Immunity Applies

The Court next turns to the question of whether there is a waiver of the government's sovereign immunity for Count II of the Amended Complaint. Plaintiff states that the cause of action for Count II is for "an unconstitutional violation of separation of powers," stating that it is the same cause of action that recently prevailed in a Fifth Circuit case. Pl. Opp. at 21–22 (citing *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 625 (5th Cir. 2022)). In that case, the Fifth Circuit held that the funding structure of the Consumer Financial Protection Bureau "violates the Appropriations Clause of the Constitution and the separation of powers principles enshrined in it." *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 635. After briefing in the instant matter was completed, the Supreme Court reversed the Fifth Circuit. *See Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 441 (2024). In doing so, however, the Supreme Court did not state that a cause of action regarding an alleged unconstitutional separation of powers could not be pleaded. The Federal Defendants do not advance this theory, and the Court will not dismiss Count II on this theory.

#### B. There Can Be No Standalone Cause of Action for a Declaratory Judgment

The CFTC and Commissioner Defendants also argue that Count II should be dismissed for failure to state a claim. ECF No. 47 ("Fed. Defs. Mem.") at 13. "A request for relief in the

form of a declaratory judgment does not constitute an independent cause of action." *Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 474 (S.D.N.Y. 2021) (citing *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)). The Court agrees and therefore dismisses Count II to the extent that it is pleaded as a standalone declaratory judgment cause of action. *See id.*; *MacGregor v. Milost Glob., Inc.*, No. 17-CV-6691 (LTS), 2018 WL 4007642, at *5 (S.D.N.Y. Aug. 22, 2018).

### C. Plaintiff Does Not Have Standing to Seek a Declaratory Judgment as Pleaded

The CFTC and Commissioner Defendants next argue that Plaintiff lacks Article III standing to seek a declaratory judgment. Fed. Defs. Mem. at 14. The Constitution limits federal courts to hearing certain "Cases" and "Controversies." U.S. CONST. art. III, § 2. The Supreme Court has explained that "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citation and quotation marks omitted). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338 (internal citation omitted). "The plaintiff bears the burden of establishing standing as of the time she brought the lawsuit and

maintaining it thereafter." *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (internal citation and quotation marks omitted). The "standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper*, 568 U.S. at 408 (quoting *Raines*, 521 U.S. at 819–20).

### 1. Plaintiff Has Not Sufficiently Pleaded Injury in Fact

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) (internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). Where plaintiffs seek declaratory relief, "they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (internal citations and quotation marks omitted); *see also Lyons*, 461 U.S. at 102. Past wrongs, however, are evidence "bearing on whether there is a real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102 (internal quotation marks omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Here, Plaintiff is unable to show that he is likely to be injured in the future. The Inspector General retired from the CFTC on June 17, 2023, and Plaintiff retired from the CFTC on August 26, 2023. The Order at issue prohibited the Inspector General from communicating with any CFTC employee or contractor while on administrative leave. With the Inspector General's retirement, the Order was no longer in effect. And now that Plaintiff is not employed by the CFTC, he cannot be bound by a CFTC directive, either one directed at him or at another employee. Furthermore, the CFTC issued a directive permitting Plaintiff to pray with the

Inspector General. As such, Plaintiff has proffered no "evidence that the defendants' 'allegedly wrongful behavior would *likely* occur or continue.'" *Murthy*, 144 S. Ct. at 1993 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). At this juncture, it is "entirely speculative" that Plaintiff would be affected by an order that restricts Plaintiff from engaging in joint prayer with any employee of the CFTC. *See id*.

That Plaintiff is "only 57 and still [has] productive years ahead," and "will consider a return" to the CFTC does not demonstrate a likelihood of future injury. *See* ECF No. 59 ("Obie Decl.") ¶ 30. Plaintiff's return to the CFTC is itself speculative. It would require not only Plaintiff to return to the workforce, but also to apply for and receive employment at the CFTC. There is no indication from the parties that this is likely to occur. Even if Plaintiff were rehired at the CFTC, Plaintiff still has provided nothing to suggest that the CFTC is likely to impose an order that restricts joint prayer in the future. The Court thus finds that Plaintiff has not shown likely future harm and declines to address the Federal Defendants' argument regarding redressability, which Plaintiff did not rebut. Count II is dismissed for lack of standing.

## IV.     Leave to Amend Is Denied

The Court denies Plaintiff's request for leave to amend. Federal Rule of Civil Procedure 15(a) provides that if a party has already "amend[ed] its pleading once as a matter of course," as Plaintiff has here, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). A court should "freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (cleaned up).

Here, Plaintiff has not shown that a second amended complaint would cure any deficiency. Even if Plaintiff were able to provide "additional clarity about the nature of his claims and the relief sought thereby (as reflected in this brief)," *see* Opp. at 22, and taking into account the statements in Plaintiff's declaration, Plaintiff does not suggest that he would be able to plead facts to overcome qualified immunity or sovereign immunity, or to demonstrate standing, *see Tanvir v. Tanzin*, No. 13-CV-6951 (RA), 2023 WL 2216256, at *14 (S.D.N.Y. Feb. 24, 2023) ("Further amendment would thus be futile, as no amendment to the pleadings could change the state of the law then in existence."); *see also Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 512 (S.D.N.Y. 2019), *aff'd in part, remanded in part sub nom. Liu v. United States Cong.*, 834 F. App'x 600 (2d Cir. 2020) (denying leave to amend as futile because the plaintiffs lacked standing to sue). Furthermore, courts routinely deny leave to amend when a plaintiff has already filed an amended complaint. *Binn v. Bernstein*, No. 19-CV-6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020), *report and recommendation adopted*, No. 19-CV-6122 (GHW), 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020) (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Plaintiff's cross motion for summary judgment is DENIED as moot. The Clerk of Court is respectfully directed to terminate ECF Nos. 45, 48, 52, and 58 and to close the case.

Dated: September 6, 2024
New York, New York

SO ORDERED.

_____
JESSICA G. L. CLARKE
United States District Judge